IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT M. WALDRON, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 2:12-cv-01863-PD |
| | : | |
| PROFESSIONAL MEDICAL MANAGEMENT | : | |
| d/b/a FINANCIAL RECOVERIES, | : | |
| Defendant | : | JURY TRIAL DEMANDED |

**DEFENDANT PROFESSIONAL MEDICAL MANAGEMENT
d/b/a FINANCIAL RECOVERIES'
MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant Professional Medical Management d/b/a Financial Recoveries ("Financial Recoveries"), by and through its undersigned counsel, moves this Court for an Order granting it summary judgment and dismissing Plaintiff Robert M. Waldron's ("Plaintiff") claims pursuant to Fed. R. Civ. P. 56(a). As set forth more fully below, there exists no genuine issues of material fact for which a reasonable jury could find in favor of Plaintiff. Therefore, summary judgment in favor of Defendant and against Plaintiff is warranted.

**I.  INTRODUCTION**

The issue presented by this case is simple: Whether the Quick Response Code ("QR Code"), also known as the 2D Bar Code, on Financial Recoveries' April 14, 2011 collection letter to Plaintiff violated the FDCPA's prohibition against language or symbols on envelopes.

Plaintiff would have this Court believe that the QR Code essentially broadcasts Plaintiff's private, personal information. Plaintiff's position requires this Court to make a quantum leap and ignore the fact that affirmative acts by a third-party, including obtaining a QR Code scanner and using it, are necessary to obtain the unintelligible series of numbers and letters embedded within the QR Code. Plaintiff's position also requires this Court to determine that the

information embedded in the QR Code actually reveals something more than it does; something connecting Plaintiff with a consumer obligation. In reality, reasonable minds can only conclude that the QR Code is a benign symbol and that the unintelligible series of numbers and letters embedded in the QR Code, along with Plaintiff's name and address, does not reveal Plaintiff is a consumer. In this regard, the facts cannot be disputed. Indeed, the QR Code reveals nothing when viewed by the naked eye and, when affirmatively scanned, reveals nothing that would inform anyone that Plaintiff owed an obligation. Accordingly, there are no genuine issues of material fact remaining for trial and Financial Recoveries is entitled to judgment as a matter of law. For these reasons, Financial Recoveries respectfully moves this Honorable Court for an Order granting it summary judgment and dismissing Plaintiff's Complaint, with prejudice.

## II.    FACTUAL BACKGROUND

On April 14, 2011, Financial Recoveries' mail service, Dantom Systems, Inc. ("Dantom"), sent Plaintiff a collection letter with a QR Code printed in the upper left-hand corner. (*See* Complaint (Doc. 1) at Exhibit A, attached as Exhibit 1; *see* Deposition of Katie Ciprietti dated August 27, 2012, at 30:11-30:21, attached as Exhibit 2). The QR Code was visible through a window of the envelope in which the collection letter was mailed. (S*ee* Doc.1 at ¶ 10). The QR Code is a square, contains no words or phrases, and has an irregular pattern of black and white markings. (*See* Exhibit 1; *see* Exhibit 2 at 20:14-20:16, 21:17-21:24). When viewed with the naked eye, the QR Code does not reveal any information. (*See* Plaintiff's Responses to Defendant's Requests for Admission No. 8, attached as Exhibit 3 (admitting that "the information revealed when a 'QR Code' is scanned cannot be read with the naked eye, but requires a scanning device")). The QR Code was placed on the April 14, 2011, collection letter by Dantom and was purposely made visible through the envelope's window in order to facilitate

Dantom's ability to efficiently process return mail. (*See* Deposition of Robert Flynn dated October 3, 2012, at 58:1-58:6; 58:25-59:9; 93:24-94:3, attached as Exhibit 4).

When the QR Code is read by a scanning device, it generates a series of numbers and letters including Plaintiff's name and address. (*See* Exhibit 3 at No. 8; *see* Exhibit 4 at 41:21-44:18; 45:1-45:22; 46:2-46:22, 87:24-88:7; *see* Exhibit 4 at Exhibit 2). Specifically, when read by a scanning device, the QR Code reveals the following: "ONFIRI10,#K#02-3646873-81624188-2-NCOA, RobertMWaldron, 825 Sunnyside Ave., Audubon, PA, 194031822253,94,100.00." (*See* Exhibit 4 at Exhibit 2). This sequence consists of the following components:

(1) Dantom's client code for Financial Recoveries – "ONFIRI10";

(2) A control code, which includes Financial Recoveries' account number, that Dantom uses in connection with its National Change of Address (NCOA) data service – "#K#02-3646873-81624188-2-NCOA";

(3) Plaintiff's name, address and full zip code plus three (3) digits – "RobertMWaldron, 825 Sunnyside Ave., Audubon, PA, 194031822253";

(4) The identifying number of the letter being sent, assigned by Dantom – "94"; and

(5) The number field – "100.00".

(*See* Exhibit 4 at 41:21-44-18; 45:1-45:22; 46:2-46:22, 87:24-88:7). Notably, the information revealed when the QR Code is scanned does not reference debt, debt collection or money. *See* Plaintiff's Responses to Defendant's RFA Nos. 13-16 (admitting that the words "debt collection", "debt" and "debtor", as well as the "$" symbol, do not appear when the QR Code is scanned). Further, other than Plaintiff's name and address, interpreting the sequence of information embedded within the QR Code requires an understanding of Dantom's internal

coding. *See* Flynn Dep. 41:21-42:4; 42:5-44-18; 45:1-22; 46:2-9, 87:24-88:7; 46:10-22.

On April 11, 2012, Plaintiff filed his Complaint claiming that the QR Code is "a symbol which when read or scanned, reveal [sic] the consumer's name, account number, and balance claimed due." (*See* Doc. 1 at ¶ 10). Because of the QR Code, Plaintiff alleges that the April 14, 2011 collection letter violated 15 U.S.C. § 1692f(8). (*See* Doc. 1 at ¶ 12).

## III. LAW AND ANALYSIS

### A. Standard of Review

The United States Supreme Court has stated that a motion for summary judgment is properly granted when, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *quoting* Fed. R. Civ. P. 56(c). The Court further explained:

> . . . The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex*, 477 U.S. 317 at 323-24. Issues of fact are genuine, "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *See Childers v. Joseph*, 842 F.2d 689, 693-94 (3rd Cir. 1988), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See Anderson*, 477 U.S. at 248. In determining whether a genuine issue of

material fact exists, the Court must consider all evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3rd Cir. 1998); *see also White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3rd Cir. 1988).

If the moving party satisfies its burden of establishing a *prima facie* case for summary judgment, the opposing party must do more than raise some metaphysical doubt as to material facts and must show sufficient evidence to support a jury verdict in its favor. *See Boyle*, 139 F.3d at 393. According to the Supreme Court, summary judgment must be granted when the evidence "is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 250. This means that a well-supported summary judgment motion cannot be defeated if the non-moving party does not "offer[] any concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Id.* at 256. The non-moving party has the "burden of producing . . . evidence that would support a jury verdict[,]" and must "set forth specific facts showing that there is a genuine issue for trial." *Id*. In this case, there are no genuine issues remaining for trial because Plaintiff cannot reasonably dispute: (1) that the QR Code reveals nothing about Plaintiff when viewed by the naked eye; (2) that multiple affirmative acts are necessary in order to discover the information embedded within the QR Code; and (3) that the sequence of letters and numbers embedded within the QR Code reveals nothing that would inform anyone that Plaintiff was or is a consumer. For these reasons, as well as those that follow, Financial Recoveries respectfully moves this Honorable Court for an Order granting it summary judgment and dismissing Plaintiff's Complaint, with prejudice.

### B. The QR Code Does Not Violate 15 U.S.C. § 1692f(8)

Plaintiff claims that Financial Recoveries violated 15 U.S.C. § 1692f(8) when it sent him

the April 14, 2011, collection letter with a QR Code that was visible. (*See* Doc. 1 at ¶¶ 10-11). Despite Plaintiff's allegations to the contrary, the QR Code is "benign language" that does not reveal anything, much less that the letter pertains to the collection of an obligation. Moreover, the information revealed when the QR Code is scanned, which makes no reference to an obligation or money, is also benign. Additionally, even if the QR Code revealed that the collection letter pertained to Plaintiff's obligation, which it does not, a third-party would have to take multiple affirmative actions, including obtaining a scanning device and then scanning the QR Code, in order to discover this information. Such action is no different than a third-party tampering with the letter.

### 1. The visible QR Code is "benign" and permissible under 15 U.S.C. § 1692f(8).

Plaintiff incorrectly claims that the QR Code violates 15 U.S.C. § 1692f(8). (*See* Doc. 1 at ¶ 10). Section 1692f(8) prohibits debt collectors from:

> [u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Section 1692f(8) "was intended merely to prevent debt collectors from embarrassing debtors by announcing the delinquency on the outside of a debt collection letter envelope." *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 494 (5th Cir. 2004). "Congress enacted § 1692f(8) simply to prevent debt collectors from "using symbols on envelopes indicating that the contents *pertain to debt collection*." *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 319 (8th Cir. 2004) *quoting Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D.Cal. 1991) (emphasis in original); *see also Lindbergh v. Transworld Sys., Inc.*, 846 F.Supp. 175, 180 (D.Conn. 1994) (noting that the legislative purpose of 1692f(8) "was to prohibit a debt

collector from using symbols or language on envelopes that would reveal that the contents pertain to debt collection – not to totally bar the use of harmless words or symbols on an envelope.")

Thus, when interpreting § 1692f(8), courts have consistently found that "benign language" does not violate § 1692f(8)'s prohibitions. "Because an interpretation of § 1692f(8) exempting benign words and symbols better effectuates Congressional purpose, and because a strict reading would lead to bizarre and impracticable consequences, we conclude the statute does not proscribe benign language and symbols." *Strand*, 380 F.3d at 320 (rejecting a claim that a corporate logo and debt collector's initials on the envelope violated § 1692f(8), reasoning that they "were benign because they did not, individually or collectively, reveal the source or purpose of the enclosed letters."); *see also Goswami*, 377 F.3d at 494 (rejecting a claim under § 1692f(8) based on the language, "priority letter", on the envelope because § 1692f(8) "only prohibits markings on the outside of envelopes that are unfair or unconscionable, such as markings that would signal that it is a debt collection letter and tend to humiliate, threaten, or manipulate debtors."); *see Masuda*, 759 F.Supp. at 1466 (finding that "(1) notice that theft of mail or obstruction of delivery is a federal crime, (2) the language 'PERSONAL & CONFIDENTIAL' and (3) the phrase 'Forwarding and Address Correction Requested" on the outside of an envelope was not an FDCPA violation); *Johnson v. NCB Collection Servs.*, 799 F.Supp. 1298, 1304-05 (D.Conn. 1992) (finding that the phrase "Revenue Department" on the outside of an envelope was not an FDCPA violation); *Lindbergh*, 846 F.Supp. at 180 (finding that the word "TRANSMITTAL" on the outside of an envelope was not an FDCPA violation).

In this matter, the visible QR Code does not reveal any information or indicate that the contents of the envelope "pertains to debt collection". The QR Code is a small square, it

contains no words or phrases, and it has an irregular pattern of black and white markings. (*See* Exhibit 1; *see* Exhibit 2 at 20:14-20:16, 21:17-21:24). When viewed by the naked eye, the QR Code does not reveal any information. (*See* Exhibit 3 at No. 8 (admitting "the information revealed when a 'QR Code' is scanned cannot be read with the naked eye")). Accordingly, the QR Code is a harmless, benign symbol that does not suggest the contents of the envelope "pertain to debt collection". *See Goswami*, 377 F.3d at 494; *Strand*, 380 F.3d at 319; *Masuda*, 759 F.Supp. at 1466; *Lindbergh*, 846 F.Supp. at 180. This conclusion, that the QR Code is a benign symbol, is most effectively demonstrated by Plaintiff's decision not to redact the QR Code from Exhibit A to his Complaint. (*See* Exhibit 1). Indeed, if Plaintiff actually believed that the QR Code revealed his personal and private information, as he argues now, he would have redacted it.

Because the facts relating to the visible QR Code and what is revealed by it are not in dispute, and it is clear that words and symbols that do not suggest that an envelope pertains to debt collection are permissible under the "benign language" exception, there are no genuine issues of material fact remaining for trial and Financial Recoveries is entitled to summary judgment as a matter of law. Accordingly, Financial Recoveries respectfully moves this Honorable Court for an Order granting it summary judgment.

### 2. The scanned QR Code is "benign" and permissible under 15 U.S.C. § 1692f(8)

The information embedded within the QR Code is also benign language. In *Johnson*, the consumer complained that a return payment envelope provided by the debt collector contained an encoded printing of his account number and obligation amount in addition to his name and address. *See Johnson*, 799 F.Supp. at 1305. Similar to the Plaintiff here, the debtor in *Johnson* claimed that the encoded information was "easily decipherable." *Id*. The District of Connecticut

found that there was no violation of § 1692f(8) and reasoned that it was "hardly apparent that any individual unenlightened in NCB's encoding process could have deciphered Johnson's debt from the printed series of numbers and letters." *Id.* at 1305-06.

In this case, like the unintelligible code in *Johnson*, the information generated when the QR Code is scanned is largely undecipherable. That is, the information is comprised, almost entirely, of internal coding used by Dantom. (*See* Exhibit 4 at 41:21-44:18; 45:1-45:22; 46:2-46:22, 87:24-88:7). Again, the scanned QR Code merely states: "ONFIRI10,#K#02-3646873-81624188-2-NCOA, Robert M Waldron, 825SunnysideAve., Audubon, PA, 194031822253, 94,100.00." (*See* Exhibit 4 at Exhibit 2). Notably, the words "debt," "debtor" and "debt collector", as well as the "$" symbol, are nowhere to be found when the QR Code is scanned. (*See* Exhibit 3 at Nos. 13-16). In addition, the scanned information does not reveal Financial Recoveries' name or anything about the contents of the envelope or suggest that what is inside the envelope "pertain[s] to debt collection." *See Goswami*, 377 F.3d at 494; *Strand*, 380 F.3d at 319; *Masuda*, 759 F.Supp. at 1466; *Lindbergh*, 846 F.Supp. at 180. Without such references, reasonable minds can only conclude that the scanned QR Code does not violate § 1692f(8).

Conversely, an example of the precise kind of claim that § 1692f(8) was intended to protect against can be found in *In re Hodges*, 342 B.R. 616 (Bkrtcy.E.D.Wash. 2006). In that case, the Bankruptcy Court in the Eastern District of Washington found a violation of both §§ 1692f(7) and f(8) when the debt collector mailed the debtor a window envelope with the words "You have a total of $1,278.04 owing" visible through the window. 342 B.R. at 625. Clearly, the potential for embarrassment and humiliation of the debtor existed with the words at issue in *Hodges*, but not for the information embedded within the QR Code at issue in this case. In light of the purpose behind § 1692f(8), protecting debtors from embarrassment and humiliation,

reasonable minds cannot conclude that the sequence of information revealed when the QR Code is scanned violates § 1692f(8).

Finally, even if the QR Code revealed that the April 14, 2011, letter pertained to the collection of a debt, the QR Code would still not violate § 1692f(8). Essentially, Plaintiff's position is that there exists a possibility that a third-party *could* take affirmative actions (*i.e.* obtaining a QR Code scanner and scanning the letter) to discover information related to Plaintiff's account. Plaintiff might as well be making a claim that a third-party *could* retrieve mail from his mailbox and then open it. Debt collectors cannot be held liable for the actions of third-parties designed to frustrate otherwise lawful debt collection activities. In this case, Financial Recoveries sent Plaintiff a collection letter that complied with the FDCPA and that had a QR Code printed on it for return mail purposes. Plaintiff's attempt to spin the facts into an FDCPA violation stretches reason and logic. There is no support for Plaintiff's claim in this case and Financial Recoveries is entitled to judgment as a matter of law. Accordingly, Financial Recoveries respectfully moves this Honorable Court for an Order granting it summary judgment and dismissing Plaintiff's Complaint, with prejudice.

## IV. **CONCLUSION**

Based on the foregoing, Financial Recoveries respectfully moves this Honorable Court for an Order granting it summary judgment and dismissing Plaintiff's Complaint, with prejudice.

          FINEMAN KREKSTEIN & HARRIS, P.C.

By      /S/ Richard J. Perr
RICHARD J. PERR, ESQUIRE (PA 72883)
JENNIFER TATUM ROOT, ESQUIRE (PA 308693)
BNY Mellon Center
1735 Market Street, Suite 600
Philadelphia, PA  19103-7513
(v) 215-893-9300; (f) 215-893-8719
e-mail: rperr@finemanlawfirm.com
        jroot@finemanlawfirm.com

SURDYK DOWD & TURNER CO., L.P.A.

By      /S/ Jeffrey Charles Turner
JEFFREY CHARLES TURNER, ESQUIRE
JOHN P. LANGENDERFER, ESQUIRE
One Prestige Place, Suite 700
Miamisburg, OH  45342
(v) 937-222-2333; (f) 937-222-1970
email:  jturner@sdtlawyers.com
        jlangenderfer@sdtlawyers.com

Attorneys for Defendant

Dated:  October 17, 2012

# CERTIFICATE OF SERVICE

I, RICHARD J. PERR, ESQUIRE, hereby certify that on or about this date, I served a true and correct copy of the foregoing electronically, or by first class mail, postage prepaid, or telecopy on the following:

>Cary L. Flitter
>Theodore E. Lorenz
>Andrew M. Milz
>Flitter Lorenz, P.C.
>450 North Narberth Avenue, Suite 101
>Narberth, PA 19072-1898
>(v) 610-266-7863; (f) 610-667-0552
>cflitter@consumerslaw.com; lorenz@consumerslaw.com; amilz@consumerslaw.com
>Attorneys for Plaintiff

/S/ Richard J. Perr
RICHARD J. PERR, ESQUIRE

Dated:   October 17, 2012