IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT M. WALDRON<br>                    Plaintiff<br><br>vs.<br><br>PROFESSIONAL MEDICAL<br>MANAGEMENT d/b/a FINANCIAL<br>RECOVERIES<br>                    Defendant | CIVIL ACTION<br><br><br><br>NO. 12-1863(PD) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBERT M. WALDRON       Plaintiff | CIVIL ACTION |
|---|---|
| vs. | |
| PROFESSIONAL MEDICAL MANAGEMENT d/b/a FINANCIAL RECOVERIES       Defendant | NO. 12-1863(PD) |

## O R D E R

AND NOW, this _____ day of _____, 2012, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 23), and Plaintiff's Opposition thereto, it is hereby ORDERED that Defendant's Motion for Summary Judgment is DENIED.

_____
U.S.D.J.

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND .............................................................................................. 2

III. LEGAL ARGUMENT ......................................................................................................... 3

   A. Standard for Summary Judgment .................................................................................. 3

   B. FDCPA's Remedial Purpose .......................................................................................... 4

   C. Account Numbers and the Amount Due are Not "Benign" ........................................... 5

      1. Whether Certain Disclosed Information is "Benign" is at Least a Jury Question ........... 5

      2. Alternatively, the Court May Find that Defendant Disclosed Personal Information as a Matter of Law ................................................................................................................ 5

   D. Defendant's QR Code is a Symbol Expressly Prohibited by the Section 1692f(8) Envelope Restrictions; there is no "Benign" Language Exception, Rather any Degree of "Innocuousness" Would go to Damages, not Liability .............................................. 10

      1. The Unambiguous Statutory Language Controls ........................................................ 10

      2. Defendant's Cited Cases are Inapposite ...................................................................... 11

      3. "Disclosure to Third Parties" is not Implicated .......................................................... 13

III. CONCLUSION .................................................................................................................. 15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT M. WALDRON<br>　　　　　　Plaintiff<br><br>vs.<br><br>PROFESSIONAL MEDICAL MANAGEMENT d/b/a FINANCIAL RECOVERIES<br>　　　　　　Defendant | CIVIL ACTION<br><br><br><br>NO. 12-1863(PD) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.  **INTRODUCTION**

For over thirty years, the Fair Debt Collection Practices Act ("FDCPA") has carried a short and clear statement of what a debt collector may, and may not, place on an envelope that the collector places in the mail to a consumer. 15 U.S.C. § 1692f(8) prohibits a debt collector from:

> "using any language or symbol other than the debt collector's address, on any envelope when communicating with a consumer by the use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

Despite the extraordinarily clear instruction, Defendant Financial Recoveries chose to place into the mails a collection letter to Mr. Waldron displaying a symbol which when read or scanned, reveals not only the consumer's name and address, but personal financial information regarding the account, including the account number and balance claimed due. (Complaint at ¶ 10; Ex. "A" hereto Deposition of Financial Recoveries designee, Katie Ciprietti, at pp. 32-35). The Defendant cedes this fact in its Motion, reproducing the content of the scan. (Def. br. at 3). There is no dispute over how the code scans. *Id.*

This is a case of first impression. However, the result is dictated by the plain statutory text and the consumer privacy concerns articulated in the Act's statement of purpose. Defendant's collection dun may be readily read by anyone using one of the millions of iPhones or iPads currently on the market. The Act carefully carves out only one exception to the broad ban – a collector may "use his business name if such does not indicate he is in the debt collection business." Even if this Court were permitted to *sua sponte* add two additional carve-outs as Defendant urges – and the Court is not – a collector's disclosure of the consumer's account number and the amount being collected is far from benign or harmless.

## II. FACTUAL BACKGROUND

Plaintiff largely agrees with the record facts as articulated in Defendant's Motion and Memorandum of Law in Support of Summary Judgment, with the exception of those facts articulated below:

Financial Recoveries attempts to dress-up its inclusion of Waldron's account number as part of a "control code" which is "used in connection with its National Change of Address (NCOA) data service." (See Def. br. at p. 3, at subparagraph "(2)"). This is denied. In reality, as testified by Dantom System's corporate designee, Robert Flynn, this "control code" is an "internal format" not required by NCOA. (Ex. "B", Flynn dep. at p. 44). Similarly, Financial Recoveries refers to Mr. Waldron's $100.00 balance as a "number field." (Def. br. at p. 3, at subparagraph "(5)"). However, this so-called "number field" refers to the exact balance claimed due by Financial Recoveries in these form letters. (Id. at pp. 46-47). Notwithstanding these transparent labels given by Defendant, Plaintiff denies that "interpreting the sequence information embedded within the QR code requires an understanding of Dantom's internal coding." (Def. br. at p. 2-3).

2

Rather, all that is required is a QR Code reader. (See Complaint at ¶ 10). In her deposition, Financial Recoveries designee, Ms. Ciprietti, demonstrated how a QR reader can be easily downloaded as an application on most smart phones, in her case, the Android phone she carries in her purse for business and home, everyday use. (See Ex. "A", Ciprietti dep. at p. 22-23). At the deposition of Mr. Flynn on October 3, 2012, Dantom revealed that a reader is not even required to view Mr. Waldron's account number, which is plainly visible right above Waldron's name in the glassine window. (*See* Ex. "B" hereto, Flynn dep. at p. 33-34, and Exhibit "P1" thereto, *See also* Ex. "D" hereto, Collection Notice).

Financial Recoveries' witness, Katie Ciprietti confirmed that a caller contacting Financial Recoveries could access information related to an account or person by merely inquiring about the account number and providing verification – *i.e.*, either the person's address or last four digits of the person's social security number. (See Ciprietti dep. at 87).

Plaintiff submits herewith the Declaration of Evan Hendricks, an expert in the field of information privacy. Mr. Hendricks states a QR Code can be deciphered with an iPhone, and that the information revealed, including the account number and balance due, constitutes "sensitive information" under every known privacy standard and definition. (Ex. "C", Hendricks decl. at ¶¶5-6). Hendricks also states that Defendant's insistence on revealing the QR code "reflects a troubling disregard for well-known, long-standing standards of privacy and data security." (Id. at ¶21).

## III.  LEGAL ARGUMENT

### A. Standard for Summary Judgment

Summary judgment is inappropriate unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if it would affect the outcome of the suit. *Anderson v. Liberty, Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of supporting its motion "with credible evidence . . . that would entitle [it] to a directed verdict if not controverted at trial." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

Waldron submits that the Defendant's placement of his account number and balance due in the window envelope of a collection dun itself violates the Act's clear prohibition. But if the Court chooses to add a "benign language" exception to the statute, whether the information is benign is at minimum a jury question.

### B. FDCPA's Remedial Purpose

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") in 1977 after noting the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). Because it is remedial legislation, "we construe its language broadly." *Id.* Among the prohibited practices, a debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f; *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011). One of the Congressional Findings and Declaration of Purpose was to redress unfair collection practice, that "contribute to ... invasions of individual privacy." 15 U.S.C. § 1692(a).

## C. Account Numbers and the Amount Due are Not "Benign"

### 1. Whether Certain Disclosed Information is "Benign" is at Least a Jury Question

Defendant relies heavily on a number of out of circuit cases that have adopted what is variously referred to as a "benign language" or "innocuous language" exception to § 1692f(8). (Def. br. at 6-7). Neither the Court of Appeals for the Third Circuit nor this Court has adopted this judicially created exception to the plain statutory text, and at least one Court of Appeals has declined to do so. *See Peter v. GC Services, L.P.*, 310 F.3d 344, 352 (5th Cir. 2002) ("we do not need to reach the issue of whether § 1692f(8) implicitly includes an exemption for benign language, since the defendant's impersonation of the Department of Education [on the envelope] is certainly not benign." Remanding for judgment in favor of the consumer).

Similarly, this Court may choose not to reach the issue of whether § 1692f(8) should be read to carry some unexpressed exception for benign language because it cannot be said as a matter of law that the inclusion of the consumer's account number and the amount of the debt being collected is benign. At the very least, what is or is not "benign" or "innocuous" is a jury question. *See Davis v. Baron's Creditors Serv. Corp.*, 2001 WL 1491503 (N.D. Ill. Nov. 19, 2001) (envelope's return address of "Baron's Creditor's Service Corporation" raised question of fact for jury as to whether envelope impermissibly revealed the nature of sender's collection business in violation of §1692f(8)). Here, at minimum, a jury may find that listing the consumer's account number and the amount due invade privacy and are not "benign."

### 2. Alternatively, the Court May Find that Defendant Disclosed Personal Information as a Matter of Law

As noted, the parties agree that the scanned QR Code reveals the following: "ONFIRI10,#K#02-3646873-81624188-2-NCOA,RobertMWaldron, 825 Sunnyside Ave.,

5

Audubon, PA, 194031822253,94,100.00."[1] Financial Recoveries downplays the publication of the financial data, stating that the QR Code merely generates "an unintelligible series of numbers and letters". (Def. br. at 1). Yet, the printout is not unintelligible. Plaintiff subpoenaed Defendant's mail vendor Dantom.[2] Dantom's corporate witness, Mr. Flynn, was more than a little coy, calling the account number part of a "NCOA control code" even though the National Change of Address system requires no such sensitive account number disclosure. (Ex. "B", Flynn dep. at p. 44) (noting the use of an "internal format" of including account number). And, although Flynn "wouldn't say [100.00 is] the balance", but rather a "number field" – Flynn admitted the so-called "number field" reflects the balance claimed due by Financial Recoveries in these form letters. (Id. at pp. 46-47). *Just how* a malefactor, such as an identity thief, might seek to use the information revealed is not in play on the liability determination here.

The Federal Trade Commission estimates that there are over nine million cases of identity theft per year. *See* FTC, "About Identity Theft" *available at* http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html (last visited November 2, 2012, copy attached as Ex. "E" hereto). According to the FTC, one of the tools of choice of the identity thief is consumer's account information. *See Id.*

Congress passed the Gramm-Leach-Bliley Act ("GLBA") specifically to protect financial account information. 15 U.S.C. §6801, *et seq. See Note, After Billions Spent to Comply with HIPAA and GLBA Privacy Provisions, Why is Identity Theft the Most Prevalent Crime in America?*, 49 Vill. L. Rev. 625 (2004). GLBA restricts dissemination of certain "nonpublic

---

[1] Plaintiff highlights here the portion of the print-out that reveals the account number and the small $100.00 disputed debt that Financial Recoveries is trying to collect.

[2] A mail vendor is a firm whose business is to print, stuff and mail collection letters for a collection agency. (Ex. "B", Flynn dep. at p. 15).

6

personal information" which includes "personally identifiable financial information ... resulting from any transaction with the consumer or any service performed for the consumer." *Id.* at §6809(4)(A)(ii). Financial Recoveries has testified that it assigns account numbers (personal identifiers) for each of its debtor accounts, (Ciprietti dep. at p. 26). The information disclosed on the envelope is personally identifiable financial information.

In another measure aimed at privacy protection, Congress amended the Fair Credit Reporting Act in passing the Fair and Accurate Credit Transactions Act. In what has become known as the "credit card truncation provision" of FACTA, the law prohibits merchants from including "more than the last five digits of the card number ... upon any receipt..." 15 U.S.C. § 1681c(g)(1); *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 245 (E.D. Pa. 2011). Plaintiff is not seeking to hold Financial Recoveries liable for remedy under these financial privacy laws, but provides these as legislative examples of why account information is deemed sensitive and worthy of protection – thus not "benign" information to be publicly disclosed.

If accepted, Defendant's argument would create an odd construct whereby Congress banned placing even 5 digits of an account number on a receipt handed directly to the consumer (15 U.S.C. §1681c(g)(1)), but – in the next subchapter of the same Consumer Credit Protection Act, the FDCPA, would *allow* as "benign" the <u>full</u> account number to be placed on an envelope which passes through the hands of countless strangers through the mail or the address where delivered. Adding a second statutory exception is not only beyond the role of the Court, it would operate to defeat the privacy protections Congress provided.

According to Plaintiff's expert, Mr. Hendricks, the information revealed by the subject QR Code "clearly constitutes 'sensitive information' under every known privacy standard and definition." (See Ex. "C" hereto, Decl. of Hendricks at ¶6). Hendricks states that, contrary to

7

long established privacy laws, "Defendant's QR Code exposed sensitive information regarding Plaintiff's finances, and did so without his 'knowledge or consent [and] in a manner that is contrary to [a consumer's] expectations'." (Id. at ¶12-13). Sensitive information is not benign information.

Defendant's own corporate designee, Ms. Ciprietti, testified how easy it would be to access a debtor's account once being armed with an account number. Ms. Ciprietti stated that a caller contacting Financial Recoveries could access information related to an account or person by merely inquiring about the account number and providing verification – *i.e.*, either the person's address or last four digits of the person's social security number. (See Ciprietti dep. at 87). Anyone holding the letter to Mr. Waldron had access to his address (see Ex. "D" hereto, collection letter), and it is not a stretch to understand that any dumpster diver or identity thief can obtain the last four digits of a debtor's SSN. Armed with the account number – cavalierly revealed by the QR Code and on the face of Defendant's collection letter in clear violation of the FDCPA – an identity thief could conceivably access whatever sensitive personal information Financial Recoveries maintained on the debtor. Whether and how such information may be used may go to damages under "nature of [the] noncompliance" but not the threshold issue of liability. *See* 15 U.S.C. § 1692k(b)(1). The FDCPA § 1692f is a strict liability statute. *Allen*, 629 F.3d at 368.

This is evidence that the disclosure through the QR Code, and the account number in the window, on an envelope is far from benign or harmless. Defendant's use of the envelope – and the account number and dollar amount revealed when the QR Code is scanned – readily violates the prohibition on "using any language or symbol, other than the debt collector's address, on any

envelope when communicating with a consumer by the use of the mails ..." § 1692f(8). There is no basis to conclude that the amount of a debt being collected is anything other than private.

Taken to its natural conclusion, Defendant's instant argument (that it can say anything on an envelope that does not refer to debt collection, Def.'s br. 8, 9) would lead to absurd and undesirable results. By Defendant's logic, a collector could place on an envelope statements like "Warrant may issue," "SSN 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" or "Addressee employed at Delta Airlines, Phila; Maintenance Supervisor." None of these remarks, on their face refer to debt collection or the existence of any debt. Yet, each is inappropriate and – true or not – would violate the consumer's privacy interest that § 1692f(8) protects. Defendant's argument also requires this Court – if it ignores the broad ban imposed by the plain language of the Act – to embark on the slippery slope of deciding case-by-case, Judge-by-Judge, whether a remark on an envelope violations notions of privacy or otherwise violates the Act. A bright line rule helps business interests as well by providing clear guidance on acceptable conduct. This is a proper exercise of legislative authority.

Apart from the potential for improper use, disclosure of this sensitive information violates basic privacy concerns. One of the stated purposes of the FDCPA was to redress unfair and abusive debt collection practices which "contribute to ... invasions of individual privacy"; 15 U.S.C. § 1692(a)(Congressional findings and declaration of purpose); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 166 (3d Cir. 2007). This Court simply cannot say at summary judgment that the revealed account number and amount owing is benign or innocuous. This is a disputed issue of fact. Summary judgment must be denied.

**D. Defendant's QR Code is a Symbol Expressly Prohibited by the Section 1692f(8) Envelope Restrictions; there is no "Benign" Language Exception, Rather any Degree of "Innocuousness" Would go to Damages, not Liability**

**1. The Unambiguous Statutory Language Controls**

Section 1692f(8) bars "any language or symbol" other than the address, with the sole exception being the collector's name, if not descriptive of the collection business. It is axiomatic that the Court's role is to give effect Congress' intent. If that intent is made plain in the text, it is unnecessary for the Court to resort to canons of statutory construction. *In re Am. Home Mortgage Holdings, Inc.*, 637 F.3d 246, 254 (3d Cir. 2011); *Allen*, 629 F.3d at 367 (FDCPA case). Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992); *Official Committee v. Chinery*, 330 F.3d 548, 559 (3d Cir. 2003)(*en banc*). Financial Recoveries' Motion requires the Court to disregard the plain, unambiguous language of Section 1692f(8).

Adopting Financial Recoveries' argument would require the Court to rewrite Congress' chosen statutory language. This is evidenced by comparing Financial Recoveries preferred reading with the actual statutory language as written, i.e. a debt collector violates 1692f(8) by:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

The <u>actual text</u> of the statute appears above. The text Financial Recoveries would have the Court adopt by judicial amendment is:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may ~~use his business name~~ **place any language or symbol on an envelope** if ~~such name~~ **such language or symbol is benign or** does not indicate that he is in the debt collection business.

10

Defendant asks this Court to ignore that the statute already includes one specific exception for the collector's name. Congress knows how to write an Act, and surely could have carved out a broader exception such as the one Defendant suggests, but chose not to. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of a contrary legislative intent." *TRW v. Andrews*, 534 U.S. 19, 28 (2001).[3]

Financial Recoveries' belief about Congress' "intent" and "legislative purpose" (Def. br. at 6-7) are only marginally relevant and cannot overcome the statute's unambiguous terms. *See Merchant's Ins. Co. v. Ritchie*, 72 U.S. 541, 544-45 (1866) ("It is quite possible that this effect of the act ... was not contemplated by Congress ...; but when terms are unambiguous we may not speculate on probabilities of intention"); *Wolk v. Unum Life Ins. Co.*, 186 F.3d 352, 355 (3d Cir. 1999) ("We must begin our analysis with an examination of ERISA's statutory language because absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.")(citations and internal quotations omitted); *U.S. Airways, Inc. v. McCutchen*, 663 F.3d 671, 679 (3d Cir. 2011) ("[V]ague notions of a statute's 'basic purpose' are inadequate to overcome the words of its text regarding the specific issue under consideration.")(citation omitted).

### 2. Defendant's Cited Cases are Inapposite

Defendant's reliance on *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488 (5th Cir. 2004) and *Strand v. Diversified Collections Serv. Inc.*, 380 F.3d 316 (8th Cir. 2004) is misplaced. (Def. br. at 6). Both of these cases ignore the plain language of Section 1692f(8) in favor of

---

[3] It is also settled that the Court may examine the statute as a whole. Many prohibitions in the Act are directed at consumer privacy. *See* 15 U.S.C. §1692(a). The immediately preceding subsection of the Act, Section 1692f(7) flatly bars a collector from communicating with a consumer by post card, so as not to reveal the nature of the collection communication or potentially sensitive information on the consumer.

divining legislative history. Under Third Circuit precedent, this Court may not so depart from the clear, unambiguous statutory language. *See Wolk*, 186 F.3d at 355. These cases also focus on whether the envelope pertains to "debt collection" rather than whether protect privacy interests are impaired. And neither sanctioned "account number" or balance due.

At pages 7-8 of its brief, Defendant cites to a number of out-of-circuit cases dismissing claims brought under § 1692f(8), none of which are apposite. These cases deal with rather innocuous markings on the outside of a letter such as "priority letter" or "forwarding and address correction requested" or "transmittal." *See* Def. br. at 7.[4] *Johnson v. NCB Collection Services*, 799 F.Supp. 1298 (D. Conn. 1992) (Def. br. at 8-9) is distinguishable. *Johnson* is not clear on what the "encoding" on the envelope entailed or revealed, stating only that "it is hardly apparent that any individual unenlightened in NCB's encoding process could have deciphered Johnson's debt from the printed series of numbers and letters." *Id.* at 1305. There does not appear to have been an assertion that the account number was readable. Here, the Complaint alleges (and the Defendant cedes) that the QR Code reveals the account number and the amount claimed due, and the account number is displayed through the window without even scanning the QR Code.

Moreover, this holding from *Johnson* is no more than *dictum* because the Court dismissed this claim on the basis that the consumer made the choice to use this envelope. ("Johnson could have easily substituted his own unmarked envelope for his return correspondence with NCB.") *Id.* If anything, *Johnson* suggests that the encoded envelope could indeed cause damage to reputation, but Mr. Johnson had made the voluntary choice to use it.

---

[4] Defendant also cites to *Johnson v. NCB Collection Services*, 799 F.Supp. 1298 (D. Conn. 1992), for the notion that the phrase "Revenue Department" on the outside of an envelope did not violate § 1692f(8). While the disclosure of an account number and balance claimed due is far more specific, and invasive than "Revenue Department" Waldron submits the use of the term "Revenue Department" on the outside of an envelope would not be countenanced in the Third Circuit. *See Rosenau*, 539 F.3d at 224.

The remainder of Defendant's cited cases deal with entirely different and distinguishable fact patterns.[5] Waldron submits that each of the authorities cited by Financial Recoveries improperly add additional exceptions to §1692f(8). But, even if that cardinal rule of statutory construction was not so, the markings in these cases are, in the main, benign. Defendant has not cited to a single case where any court condoned the inclusion of an account number and balance claimed due on an envelope.

### 3. "Disclosure to Third Parties" is not Implicated

At page 10 of its brief, Defendant sets up a strawman argument which it then proceeds to dismantle. Defendant claims that "Essentially, Plaintiff's position is that there exists a possibility that a third-party could take affirmative actions (i.e. obtaining a QR Code and scanner and scanning the letter) to discover information related to Plaintiff's account. Plaintiff might as well be making the claim that a third-party could retrieve mail from his mailbox and then open it." (Def. br. at 10). First, what a third-party does or does not do has no bearing on Mr. Waldron's claim based on the impermissible language or symbol; and second, Financial Recoveries argument to this effect evidences a disregard for the facts and the express prohibitions of the Act.

The Court should reject Defendant's attempt to recast Plaintiff's claim. Plaintiff's suit does not rest upon § 1692b which regulates communications between debt collectors and non-consumer third parties. Rather, under § 1692f(8), Congress regulated what could be placed on an envelope <u>at the source</u>, *i.e.*, restricting what a collector may put on the envelope before it is placed into the stream of the mails. § 1692f(8) does not require that the Plaintiff demonstrate

---

[5] Financial Recoveries cites to a Washington bankruptcy case as "the precise kind of claim that § 1692f(8) was intended to protect against." *In re Hodges*, 342 BR 616 (Bky. E.D. Wash. 2006). Just because the letter in *Hodges* stated "you have a total of $1278.04 owing" was found to be a violation of the Act does not mean that the disclosure of the consumer's account number and balance claimed due is not. In this Circuit, the statutory text determines the rights Congress intended to protect. The Act bars collectors from "using *any* language or symbol ..."

when or how the letter was received by any particular third party (although a Plaintiff would be free to offer such evidence). In attempting to shift the focus from the Act's prohibition on what a collector may place on an envelope to the hypothetical wrongful conduct of third parties who may later see the envelope, Defendant is employing the age-old "fallacy of diversion" – the strawman. *See Apodaca v. Discover Fin. Servs, Inc.*, 417 F.Supp.2d 1220, 1229 (D. N.M. 2006).

Defendant conveniently disregards that its QR Code is directly visible <u>through the window of its envelopes</u>. Since the account number is readable without any application, and the QR symbol is readily viewable through the window, the only affirmative action anyone would have to take would be to scan the QR Code with their iPhone or other smart phone – something the QR Code invites by its very presence on the letter. Financial Recoveries own designee demonstrated how obtaining such a QR code reader can be done easily by just about anybody with a smart phone. (Ex. "A", Ciprietti dep. at pp. 22-23) (discussing download of QR reader application). No mail "tampering" is necessary, but even if it were, the Act is clear.

Finally, Defendant's cavalier attitude towards it obligations is but the corporate version of "Let Them Eat Cake". Financial Recoveries "took a chance that [its] conduct would not run afoul of the Act [the FDCPA]. One who deliberately goes perilously close to an area of proscribed conduct takes the risk that he may cross the line." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1026 (9th Cir. 2012) (*quoting FTC v. Colgate–Palmolive, Co.*, 380 U.S. 374, 393 (1965), internal quotes omitted). Defendant crossed.

## III.  CONCLUSION

Defendants violated the FDCPA by including a language or symbol on an envelope, in disregard of the express terms of that Act. While no additional exceptions may be read-in, the information revealed in the QR Code visible through the envelope of Defendant's collection letter is neither benign or innocuous, an inquiry which is essentially a fact question in dispute. Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted:

Date:  11/02/12

*/s/ Cary L. Flitter*
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072
(610) 822-0782

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT M. WALDRON<br>    Plaintiff<br><br>vs.<br><br>PROFESSIONAL MEDICAL<br>MANAGEMENT d/b/a FINANCIAL<br>RECOVERIES<br>    Defendant | CIVIL ACTION<br><br><br><br>NO. 12-1863(PD) |

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2012, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to:

Richard J. Perr, Esquire
Jennifer Tatum Root, Esquire
FINEMAN, KREKSTEIN & HARRIS
BNY Mellon Center
1735 Market Street, Suite 600
Philadelphia, PA 19103
**Attorneys for Defendant**

Said document is available for viewing and downloading from the ECF system.

Date: 11/2/12

*/s/ Cary L. Flitter*
CARY L. FLITTER
Attorney for Plaintiff