**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT M. WALDRON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 12-1863** |
| | : | |
| **PROFESSIONAL MEDICAL** | : | |
| **MANAGEMENT, d/b/a/ FINANCIAL** | : | |
| **RECOVERIES** | : | |
| **Defendant.** | : | |
| | : | |

**Diamond, J.**                                                                                  **March 13, 2013**

**<u>MEMORANDUM</u>**

Debtor Robert M. Waldron alleges that Defendant Professional Medical Management violated the Fair Debt Collection Practices Act when it mailed him a collection letter whose outer envelope bore a computer code symbol. 15 U.S.C. § 1692f.  I will grant Defendant's Motion for Summary Judgment.

I.        <u>BACKGROUND</u>

The material facts are largely undisputed. Defendant—doing business as "Financial Recoveries"—is a debt collection firm. On April 14, 2011, Dantom Systems, Inc. (Defendant's mail service) sent Plaintiff Waldron a collection letter, instructing him to detach and return the top portion with his payment of the amount owed: $100. The letter was enclosed in an envelope. Visible through the transparent pane in the envelope, the letter's top portion included Defendant's return address and this symbol:



Although this symbol might appear cryptic or decorative, it is, in fact, a "Quick Response Code"—a barcode that, when scanned by an appropriately programmed computer, reveals the following embedded letters and numbers: "ONFIRI10,#K#02-3646873-81624188-2-NCOA, RobertMWaldron, 825 Sunnyside Ave., Audubon, PA, 194031822253,94,100.00."

The Parties agree that:

(1)   "ONFIRI10" is Dantom's client code;

(2)   "#K#02-3646873-81624188-2-NCOA" is a control number Dantom uses in connection with its National Change of Address data service;

(3)   "RobertMWaldon, 825 Sunnyside Ave., Audubon, PA, 194031822253" is Plaintiff's name and complete address; and

(4)   "94" is Dantom's identifying number for the letter.

The Parties dispute the meaning of the nineteen digits "194031922253,94,100.00." Defendant's representative testified that this is a "number field." *(Doc. No. 23, Ex. 4.)* Although Plaintiff offers no evidence to contradict this testimony, he nonetheless believes that the final five digits "100.00" represent his unpaid debt. *(Doc. No. 24 at 2.)*

The QR Code "was purposely made visible through the envelope's window in order to facilitate [Defendant's] ability to efficiently process return mail." *(Doc. No. 23 at 2-3.)* The Code can be read by many scanner-equipped smart phones and tablet computers with the appropriate scanner application.

Plaintiff believes that given the widespread use of scanner-equipped devices, making the

QR Code visible through the transparent pane is the same as placing the embedded data itself on the collection envelope's face. Plaintiff alleges that because that data includes Defendant's internal account number for Plaintiff—"ONFIRI10,#K#02-3646873-81624188-2-NCOA"—and the debt he owes—"194031822253,94,100.00"—Defendant's placement of the Symbol on the envelope's face disclosed private information in violation of the Act. *(Doc. No. 24 at 2.)* In moving for summary judgment, Defendant urges me to conclude that because the Symbol discloses nothing, its visibility on the face of the collection envelope is permissible.

II.    <u>LEGAL STANDARDS</u>

    A.    *<u>Summary Judgment</u>*

I may grant summary judgment "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the absence of any genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). An issue is material only if it could affect the result of the suit under governing law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). I "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. <u>Hugh v. Butler Cnty. Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, I determine that there is no genuine issue of material fact, summary judgment is appropriate. <u>See</u> <u>Celotex</u>, 477 U.S. at 322; <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 83 (3d Cir. 1987).

    B.    *<u>The Fair Debt Collection Practices Act</u>*

The FDCPA prohibits debt collectors from using "unfair or unconscionable means to

collect or attempt to collect any debt." 15 U.S.C. § 1692f. The Act thus explicitly prohibits:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

§1682f(8).

Because a literal application of this provision would produce absurd results—e.g., preclude a debt collector from placing a stamp or a debtor's address on an envelope—courts have applied a "benign language exception" to the prohibition set out in § 1692f(8). Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318-19 (8th Cir. 2008); Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 494 (5th Cir. 2004); Lindbergh v. Transworld Sys., Inc., 846 F. Supp. 175, 180 & n.27 (D. Conn. 1994); Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1466 (C.D. Cal. 1991).

Under this exception, § 1692f(8) must be interpreted in concert with the Act's purpose: "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors," and to prevent "disclosing the consumer's personal affairs to third persons." S. Rep. No. 95-382, at 1, 4 (1977); see also Goswami, 377 F.3d at 494 ("The Senate report on the bill makes clear that § 1692f(8) was intended merely to prevent debt collectors from embarrassing debtors by announcing the delinquency on the outside of a debt collection letter envelope[.]"). Accordingly, under the exception, "[a] debt collector does not violate [§ 1692f(8)] by using an envelope with words or notations that do not suggest the [debt collection] purpose of the communication." Goswami, 377 F.3d at 494 (thick blue bar and phrase "Priority Letter" are benign); see also Strand, 380 F.3d at 316 (phrases "D.C.S., Inc.," "PERSONAL AND CONFIDENTIAL," and "IMMEDIATE

4

REPLY REQUESTED" and D.S.C., Inc.'s corporate logo were benign); <u>Lindbergh</u>, 846 F. Supp. at 176 (bold blue stripe and word "TRANSMITTAL" are benign); <u>Masuda</u>, 759 F. Supp. at 1466 (phrases "Personal & Confidential" and "Forwarding and Address Correction Requested" are benign).

III.   <u>DISCUSSION</u>

Plaintiff equates the QR Code Symbol, the Code's embedded data, and the English language meaning of that embedded information. Plaintiff thus alleges that the Symbol's placement on the envelope's face conveys to third parties that the envelope contains a collection letter for a debt Plaintiff owes, as well as Plaintiff's "account number and the balance due"—all in violation of the Act. *(Doc No. 24 at 7.)* I do not agree. As I explain below: 1) the QR Code Symbol itself conveys nothing; 2) making the Symbol visible through the envelope's transparent pane is not the same as making visible the embedded letters and numbers; and 3) even if it were the same, insofar as the embedded information is comprehensible, its "disclosure" does not violate the Act.

A.   *The Benign Language Exception*

Plaintiff apparently believes that in the absence of Third Circuit authority, I may not adopt the benign language exception to the prohibition set out in 15 U.S.C. § 1692f(8). *(Doc. No. 24 at 5) ("Even if this Court were permitted to* sua sponte *add two additional carve outs [to the §1692f(8) prohibition] as Defendant urges—and the Court is not—a collector's disclosure of the consumer's account number and the amount collected is far from benign or harmless.")* This argument is—to put it kindly—puzzling. It is because the Third Circuit has not yet addressed the

issue that I am obligated to decide in the first instance whether or not to adopt the benign language exception. Contrary to Plaintiff's suggestion, although the Fifth Circuit deferred decision on the question, no Court has "declined" to adopt the exception. I agree with the reasoning in Strand, Goswami, Lindbergh, and Masuda. Strand, 380 F.3d at 318-19; Goswami, 377 F.3d at 494; Lindbergh, 846 F. Supp. at 180 & n.27; Masuda, 759 F. Supp. at 1466. Congress created the Act to protect consumers from abusive debt collection practices and the invasion of their privacy. The placement of innocuous symbols or words on a collection envelope is not an evil the Act was intended to prevent. Accordingly, like those courts, I will adopt the benign language exception.

Plaintiff also argues—apparently in the alternative—that even if I adopt the benign language exception, whether the exception applies is a jury question. *(Doc. No. 24 at 5.)* I have been unable to find a reported decision to support this contention. This is hardly surprising, as it would require me to submit to the jury whether the postage stamp on Defendant's April 14th collection envelope is benign—exactly the kind of question the exception is intended to answer.

The sole decision Plaintiff offers does not support his contention. In Davis v. Baron's Creditors Service Corporation, the plaintiff alleged that the defendant—Baron's Creditors Service Corporation—violated the Act when it put its name on the face of an envelope containing a collection letter. No.00-4104, 2001 WL 1491503, at *5 (N.D. Ill. Nov. 20, 2001). In denying the defendant's summary judgment motion, the district court ruled that the defendant's name was not benign, and that the jury would determine whether the defendant violated the Act by putting its name on the collection envelope. Id. Like every other court to address this issue, the Davis Court thus ruled that whether the benign language exception applies is a question of law. Id.; see also Strand, 380 F.3d at 319; Goswami, 377 F.3d at 494; Lindbergh, 846 F. Supp. at

180 & n.27; Masuda, 759 F. Supp. at 1466. In keeping with this uniform authority, I will decide whether the exception applies here.

       B.      *The QR Code Symbol Itself Conveys Nothing*

Without a scanner, a QR Code Symbol is simply a pattern of black and white markings shaped into a square. Like the neutral corporate symbols in Strand and Lindberg, the un-scanned Symbol here does not "reveal the source or purpose of the enclosed letter." Strand, 380 F.3d at 319; Lindberg, 846 F. Supp. at 180. Moreover, because—as Plaintiff argues—businesses commonly use the QR Codes for many different purposes, the Code's use here would not suggest to third parties that Plaintiff had been sent a collection letter. In these circumstances, I conclude that the QR Code Symbol is benign and does not violate the Act.

       C.      *The Embedded Letters and Numbers Are Not Easily Accessed*

The Parties agree that only the QR Code Symbol is visible through the transparent pane of Defendant's collection envelope. Plaintiff nonetheless argues that there is no material difference between displaying the Symbol and displaying the embedded data it represents. In Plaintiff's view, because "a QR reader can be easily downloaded as an application on most smart phones," Defendant "readily violates" the Act by revealing Plaintiff's "account number and dollar amount . . . when the QR Code is scanned." *(Doc. No. 24 at 6, 11.)* Plaintiff has presented no evidence to support these assertions, however. Moreover, Plaintiff ignores that once it is placed in the U.S. Mail, the collection letter may not be "scanned" with impunity.

Federal law proscribes postal workers' tampering with the mail. 18 U.S.C. § 1703. Mail tampering includes detaining, destroying, delaying, or opening any letter or other mail. Id. Postal

7

workers are also prohibited from searching, inspecting, reading, or disclosing information obtained from the mail or its contents. United States Postal Service, Administrative Support Manual 274.21 (2005). Postal workers who tamper with the mail or violate these postal regulations are subject to administrative discipline or criminal prosecution. Burrell v. Runyon, No.95-253, 1996 U.S. Dist. LEXIS 8656, at *2 (S.D. Ala. June 7, 1996).

Mail is also protected from search by postal workers under the Fourth Amendment. See United States Postal Service, Administrative Support Manual 274.21. Courts have thus ruled that an x-ray scan of mail constitutes a Fourth Amendment search. See United States v. Napan, 769 F. Supp. 2d 969, 971 (E.D. Va. 2011).

Regulations restrict access to mail by those who do not work for the Postal Service. Postal workers are allowed to "exhibit mail to the addressee only." United States Postal Service, Handbook M-41: City Delivery Carriers Duties and Responsibilities 131.34 (2001). Federal law prohibits taking another's mail with the specific intent to obstruct correspondence or pry into the business or secrets of another. 18 U.S.C. § 1702. This protection continues until the mail is physically delivered to the addressee himself (not just to his mailbox) or his authorized agent. Id.

Once again, Plaintiff has offered no evidence to support his allegation respecting the "ubiquity" of QR Code scanners. In any event, however common scanners may be, the law and regulations concerning the handling and security of mail would make the unauthorized scanning Plaintiff envisions difficult at best and likely illegal at worst. In these circumstances, Plaintiff has not shown that the information embedded in the QR Code is also, as a practical matter, visible on the face of Defendant's collection envelope. On the contrary, only the Symbol is visible. As I have discussed, because the Symbol is benign, displaying it does not violate the Act.

8

D.    <u>*The Disclosure of Information Embedded In Code Does Not Violate the Act*</u>

Finally, I will accept, *arguendo*, Plaintiff's contention that there is no material difference between displaying the Symbol and the embedded data itself on the collection envelope's face. Plaintiff argues that the disclosure of this data violates the Act because it discloses his account number and debt. I do not agree. The embedded data is a seemingly random series of letters and numbers that only Defendant can decipher. Its inclusion on the envelope's face thus does not violate the Act.

The holdings of the Tenth Circuit and the District of Connecticut in very similar cases are instructive. <u>Marx v. General Revenue Corp.</u>, 668 F.3d 1174 (10th Cir. 2011); <u>Johnson v. NCB Collection Servs.</u>, 799 F. Supp. 1298, 1305 (D. Conn. 1992). In <u>Marx</u>, the district court concluded after a bench trial that a debt collector did not violate the Act when it faxed to the debtor's workplace an inquiry respecting her employment. 668 F.3d at 1176. The district court determined, <u>inter</u> <u>alia</u>, that the inclusion of the collector's internal account number for the debtor did not violate the Act. <u>Id.</u> In affirming, the Tenth Circuit panel majority held that the collector did not violate the Act because the fax did not appear to be a communication related to debt collection. <u>Id.</u> at 1177. Critical to the Court's determination was that the account number did not imply a debt: "It is a jumble of numbers designed for internal identification purposes, *the functional equivalent of a bar code*." <u>Id.</u> at 1182-83 (emphasis added).

Similarly, in <u>Johnson</u>, a debt collector provided a return payment envelope with its collection letter; the envelope included a code of numbers and letters representing the debtor's account number and amount owed. 799 F. Supp. at 1305. The district court ruled that the inclusion of the coded account number and debt amount on the envelope did not violate the FDCPA because, <u>inter</u> <u>alia</u>, it was unclear that a person who was unfamiliar with the code would

9

be able to decipher the printed series of numbers and letters. Id. at 1305-06.

Marx and Johnson are persuasive here. The "jumble" of letters and numbers that comprise Plaintiff's account number—"ONFIRI10,#K#02-3646873-81624188-2-NCOA"—reveals nothing to a person without the means to decipher it. See Shulick v. Credit Bureau Collection Servs., Inc., No. 02-1127, 2004 WL 234374, at *1 (E.D. Pa. Feb. 3, 2004) (deciding § 1692f(8) violation based on what a "casual observer" would perceive). Similarly, although Plaintiff has isolated "100.00," those digits conclude a string of fourteen other numbers: "194031822253,94,100.00." No reasonable fact finder could determine that the final five digits of this incomprehensible series represent a sum of money Plaintiff owes to a third party. See Johnson, 799 F. Supp. at 1305-06 ("[I]t is hardly apparent that any individual unenlightened in [the defendant's] encoding process could have deciphered [the plaintiff's] debt from the printed series of numbers and letters.").

Finally, courts have uniformly held that the gravamen of a § 1692f(8) violation is that the challenged symbol clearly refers to a debt. See Goswami, 377 F.3d at 494; see also Mathis v. Omnium Worldwide, No. 04-1614, 2006 WL 1582301, at *6 (D. Or. June 4, 2006) ("Estate Recoveries, Inc." and "Over 15 Years of Service to the Financial Industry" on an envelope does not violate § 1692f(8)); Johnson, 799 F. Supp. at 1305 ("Revenue Department" on envelope does not clearly refer to a debt). Here, there is no such reference. Defendant did not even include its name on the collection envelope. On the contrary, it included only a cryptic symbol that, once "decoded," included an equally cryptic combination of numbers and letters.

In these circumstances, because Defendant's April 14th letter and envelope did not violate the Act, I will grant summary judgment in Defendant's favor.

IV.   <u>MOTION TO STRIKE</u>

Other than his own deposition testimony, Plaintiff provided almost no evidence to support his Complaint. He certainly provided no evidence to support his allegations respecting the use of smart phones, the use of QR Codes, and the availability of scanners. Rather, on November 2, 2012—well after the September 21, 2012 close of discovery—Plaintiff provided the affidavit of "privacy expert" Evan Hendricks, who opines, <u>inter</u> <u>alia</u>, that Defendant's purported disclosure of Plaintiff's account number and debt amount violated Plaintiff's privacy and so violated the Act. Defendant has asked me to strike the affidavit because it was provided after the close of discovery. Although Defendant is correct, in an abundance of caution, I have considered the affidavit. It does not change my decision.

V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment *(Doc. No. 23)* is **GRANTED**. Defendant's Motion to Strike *(Doc. No. 25)* is **DENIED as moot.**

An appropriate Order follows.

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.